No. 20-6351

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

BERMAN JUSTUS, JR.,

*Petitioner-Appellant,*

v.

HAROLD W. CLARKE,

*Respondent-Appellee*

On Appeal from the United States District Court
for the Western District of Virginia

**MOTION TO STAY THE MANDATE**

JASON S. MIYARES
  *Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-5315 – Telephone
(804) 371-0200 – Facsimile

ANDREW N. FERGUSON
  *Solicitor General*

ERIKA L. MALEY
  *Principal Deputy Solicitor General*

KEVIN M. GALLAGHER
  *Deputy Solicitor General*

RICK W. EBERSTADT
  *Assistant Solicitor General*

September 4, 2023

*Counsel for Respondent-Appellee*

Respondent-Appellee Harold W. Clarke requests that the Court stay the mandate to preserve the status quo pending his forthcoming petition for a writ of certiorari in the United States Supreme Court. See Fed. R. App. P. 41(d). Counsel for Petitioner-Appellant opposes staying the mandate.

This Court may grant a stay of the mandate when a certiorari petition will present a "substantial question" and there is "good cause" for a stay. Fed. R. App. P. 41(d); see also Local Rule 41. This case meets that standard: the panel majority's decision involves important questions regarding the finality of criminal convictions in state courts, and conflicts with decisions of other circuits and the Supreme Court. It will also cause the Commonwealth of Virginia to expend considerable resources to hold evidentiary hearings. See *Chandler v. Cook Cnty.*, 282 F.3d 448, 451 (7th Cir. 2002) (Ripple, J., in chambers) (granting motion to stay the mandate given "the importance of the issue, the conflict among the circuits that have ruled on the matter, and the injury that [the government] could suffer"). This Court should stay the mandate pending Clarke's petition for a writ of certiorari.

1

REASONS FOR GRANTING THE STAY

Courts will grant a motion to stay the mandate pending a petition for a writ of certiorari upon a showing that "the petition would present a substantial question," and that "there is good cause for a stay." Fed. R. App. P. 41(d)(1). Both requirements are met here.

### I. Clarke's certiorari petition will present a substantial question

A certiorari petition presents a "substantial question" if there is a "reasonable probability that four Justices will vote to grant certiorari and a reasonable possibility that five Justices will vote to reverse." *Chandler*, 282 F.3d at 450. This assessment turns on "the issues that the applicant plans to raise," and "the considerations that guide the Supreme Court in determining whether to issue a writ of certiorari." *Books v. City of Elkhart*, 239 F.3d 826, 828 (7th Cir. 2001) (Ripple, J., in chambers).

This standard does not put the petitioner in the "near impossible position" of "convinc[ing] a judge who had just ruled against it that the party is *likely* to succeed on appeal." *Cigar Ass'n of Am. v. FDA*, 317 F. Supp. 3d 555, 561 n.4 (D.D.C. 2018) (emphasis added). Rather, it requires only that "the prospects of reversal can be characterized as 'fair'" because other jurists might see the case differently. *Rostker v. Goldberg*, 448 U.S.

2

1306, 1309 (1980) (Brennan, J., in chambers); see *American Mfrs. Mut. Ins. Co. v. American Broad-Paramount Theatres, Inc.*, 87 S. Ct. 1, 2 (1966) (Harlan, J., in chambers) (granting a stay because the issues could not "be regarded as lacking in substance" and were "highly debatable"); *Chandler*, 282 F.3d at 450 (granting a stay based on the importance of the issue and the disagreement among other jurists, even though the panel was "unanimous").

There is a "reasonable probability that four Justices will vote to grant certiorari" here. First, the questions of when a habeas petitioner's mental condition provides grounds to reopen a final judgment and toll the statute of limitations are "important question[s] of federal law." See S. Ct. R. 10(c). Numerous habeas petitioners have one or more mental health conditions. Community Oriented Policing Services Dispatch Volume 15, *Mental Health and Reentry: How Court Services Offender Agency Meets the Challenge of Mental Health Community Supervision* (May 2022), available at: https://tinyurl.com/4xz9anss. And numerous habeas petitioners fail to comply with the statute of limitations set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA), and seek tolling to excuse that noncompliance. See, e.g., *Hoover v. Clarke*, No.

3

1:20CV1107 (LO/IDD), 2022 WL 287928, at *3 (E.D. Va. Jan. 31, 2022) (collecting cases). The questions presented will thus arise in many cases, and have a significant impact on habeas litigation and the finality of state criminal convictions.

Indeed, as the dissent noted, the Supreme Court has "required a movant seeking Rule 60(b)(6) relief to establish 'extraordinary circumstances' as a means of preserving *the finality of judgments*." ECF No. 77 (Op.) at 34–35 (Neimeyer, J., dissenting) (citing *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)). Finality is an "important value[]," *Stutson v. United States*, 516 U.S. 193, 197 (1996), that serves "goals important to our system of criminal justice and to federalism," *Kuhlmann v. Wilson*, 477 U.S. 436, 453 n.16 (1986). By expanding Rule 60(b)(6) relief beyond the exceedingly narrow circumstances in which Congress intended the rule to operate, the panel majority's holding here undermines the "finality that is essential to both the retributive and deterrent functions of criminal law." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1739 (2022) (cleaned up). Notably, the ruling here "prolong[s] a habeas case" that was untimely filed almost ten years ago, and that challenges a

state-court murder conviction entered almost twenty years ago. *Ibid.* (cleaned up); see JA3–17, 65.

Further, there is a reasonable probability that the petition will be granted because the opinion conflicts with rulings of other circuit courts of appeals and the Supreme Court. See S. Ct. R. 10(a) (listing "a United States court of appeals [] enter[ing] a decision in conflict with the decision of another United States court of appeals on the same important matter" as a "compelling reason[]" for certiorari). As the dissent highlights, the panel majority's holding that Justus's filing of other pleadings during his alleged period of incompetency did not "preclude a finding that Justus's mental illness during that timeframe amounts to an 'extraordinary circumstance,'" Op. 30, conflicts with published holdings in the Seventh Circuit on the same issue, *id.* at 41–42 (Niemeyer, J., dissenting) (quoting *Conroy v. Thompson*, 929 F.3d 818, 821 (7th Cir. 2019) and *Obriecht v. Foster*, 727 F.3d 744, 751 (7th Cir. 2013)). The majority opinion also conflicts with rulings of the Sixth and Tenth Circuits. See *Watkins v. Deangelo-Kipp*, 854 F.3d 846, 852 (6th Cir. 2017) ("[A]fter the limitations period began to run, [petitioner] filed at least two timely motions in state court . . . Additionally, he timely filed, pro se, the original habeas petition.

5

That he was able to make these timely filings indicates that his mental illness was not the cause of his untimely amended habeas petition."); *Biester v. Midwest Health Services, Inc.*, 77 F.3d 1264, 1268 (10th Cir. 1996) ("[I]n spite of his mental condition, [plaintiff] 'was capable of pursuing his own claim'" where he took actions to pursue claim during relevant period, and "[t]hus, his mental condition simply does not rise to the level of the mental incapacity" required for equitable tolling).[1]

The panel majority also conflicts with other circuits as to whether evidence of mental incompetency during the specific time period at issue is necessary for tolling. The Sixth and Seventh Circuits have held that petitioners with chronic mental illnesses were not entitled to equitable tolling absent "evidence of [their] mental disability" and how it impacted their ability to meet filing deadlines during "the relevant time period." *Mayberry v. Dittman*, 904 F.3d 525, 530–31 (7th Cir. 2018); see also *Watkins*, 854 F.3d at 852 (rejecting argument that petitioner's earlier diagnosis of "Psychotic Disorder" "carried over into the limitations

---

[1] That holding also conflicts with unpublished decisions in the Second and Ninth Circuits. See *Rios v. Mazzuca*, 78 Fed. Appx. 742, 745 (2d Cir. 2003); *Walker v. Schriro*, 141 Fed. Appx. 528, 530–31 (9th Cir. 2005).

6

period" because "mental illness is not the same as mental incompetence."). The panel majority, by contrast held that, because Justus has a "lifelong illness," his "earlier and later medical records"—records outside the relevant filing period—"provide evidence of his mental functioning during the relevant period." Op. 27–28. Supreme Court intervention is needed to ensure uniformity on the important question of when a habeas petitioner's mental condition entitles him to equitable tolling of the AEDPA statute of limitations.

Further, the important federal questions here were decided by the panel majority "in a way that conflicts with relevant decisions of" the Supreme Court, S. Ct. R. 10(c), providing "a reasonable possibility that five Justices will vote to reverse," *Chandler*, 282 F.3d at 450. As the dissent notes, the majority "overlooks the Supreme Court's express admonition that, in the context of federal habeas proceedings, lower courts should be especially demanding before finding that extraordinary circumstances justifying a reopening are present." Op. 34 (citing *Gonzalez*, 545 U.S. at 535).

In addition, the Supreme Court held in *Kemp v. United States*, 142 S. Ct. 1856 (2022), that a motion under the catchall provision in Rule

7

60(b)(6) "is available only when Rules 60(b)(1) through (b)(5) are inapplicable." *Id.* at 1861. *Kemp* thus establishes that if Justus *could* have brought his motion under Rule 60(b)(1), then Rule 60(b)(6) is inapplicable, and his motion was untimely. The panel majority concluded that Justus's motion did not seek relief on the ground of "mistake" or "excusable neglect" under Rule 60(b)(1) because delay related to a mental condition is necessarily not "attributable to negligence." Op. 19 (quoting *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394 (1993)). But *Pioneer* concluded that Rule 60(b)(1) is inapplicable only where "the party is faultless in the delay." 507 U.S. at 393. "[I]f a party is partly to blame for the delay," then relief must be sought under Rule 60(b)(1). *Ibid.* By contrast, the panel majority appears to conclude that a "severe mental illness" is a *per se* "extraordinary circumstance," without requiring any showing that the party's litigation strategy, faulty legal research, or other decisions had no role in the delay. Thus, the majority opinion is contrary to *Kemp*'s ruling that a court must first analyze whether the party could have brought his motion under Rule 60(b)(1) and then, only after finding that he could not do so, determine whether any "extraordinary circumstances" existed. *Kemp*, 142 S. Ct. at 1861.

8

Because the certiorari petition here will present substantial questions, the motion to stay the mandate should be granted.

### II. There is good cause to stay the mandate

Good cause also exists for the stay. An applicant can demonstrate good cause by showing "a likelihood of irreparable harm if the judgment is not stayed." *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1302 (2010) (Scalia, J., in chambers); accord *Books*, 239 F.3d at 828.

As an initial matter, absent a stay pending the petition, the Commonwealth will face an evidentiary hearing in this case which will require time and resources, and which likely would involve fact witnesses (some of whom may no longer work in the same positions or even reside in the Commonwealth) as well as expert witnesses. This hearing would be completely unnecessary if the Supreme Court were to grant certiorari and reverse.

But the consequences of the opinion are likely to extend far beyond Justus's case. Again, both claims of mental conditions and requests for tolling of AEDPA's statute of limitations are very common. See p. 3, *supra*. Under the opinion, far more state habeas petitioners are likely to seek resource-intensive evidentiary hearings in hopes of reopening their

9

convictions—even if the convictions are decades old or their habeas petitions were denied many years ago. These requests will be highly burdensome for both the Commonwealth and the district courts. See *Books*, 239 F.3d at 829 (granting a stay where "the formulation of a remedy would require significant time and attention").

In addition, the Commonwealth faces irreparable harm from the threat to the finality of an unknown number of convictions. The Supreme Court has repeatedly expressed the importance of federal courts' "enduring respect for the State's interest in the finality of convictions that have survived direct review within the state court system." *Calderon v. Thompson*, 523 U.S. 538, 554 (1998) (cleaned up) (citation omitted). That is because "[f]inality is essential to both the retributive and the deterrent functions of criminal law," "enhances the quality of judging," and serves "to preserve the federal balance." *Ibid.* Overturning state criminal decisions on federal habeas review serves to undermine "both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights[.]" *Murray v. Carrier*, 477 U.S. 478, 487 (1986) (cleaned up) (citation omitted). Particularly where, as here, the panel's decision risks allowing a pathway for unknown numbers of state

10

inmates to revisit and challenge the finality of their convictions, the Commonwealth faces irreparable harm absent a stay. See *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State.").

Considerations of judicial economy, state administrative costs, and state interest in the finality of convictions all constitute good cause for a stay pending disposition of the Commonwealth's forthcoming petition for certiorari.

## CONCLUSION

For the foregoing reasons, the Court should stay the mandate pending the filing and disposition of a petition for writ of certiorari.

Respectfully submitted,

HAROLD W. CLARKE

By: */s/ Erika L. Maley*
    Erika L. Maley
    *Principal Deputy Solicitor General*

11

| | |
|---|---|
| JASON S. MIYARES<br>  *Attorney General*<br><br>Office of the Attorney General<br>202 North Ninth Street<br>Richmond, Virginia 23219<br>(804) 786-5315 – Telephone<br>(804) 371-0200 – Facsimile | ANDREW N. FERGUSON<br>  *Solicitor General*<br><br>KEVIN M. GALLAGHER<br>  *Deputy Solicitor General*<br><br>RICK W. EBERSTADT<br>  *Assistant Solicitor General* |
| September 4, 2023 | *Counsel for Respondent-Appellee* |

12

## CERTIFICATE OF COMPLIANCE

This motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,137 words. This motion also complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century typeface.

*/s/ Erika L. Maley*
Erika L. Maley

## CERTIFICATE OF SERVICE

I certify that on September 4, 2023, I electronically filed the foregoing motion with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Erika L. Maley*
Erika L. Maley
